## HUBBARD v. COUNTY OF FULTON.

1. An embankment forming a part of a public road, constructed of dirt across a ravine, under which there is a culvert to permit the flow of a branch down the ravine, is not a bridge within the meaning of the Civil Code, § 748, which makes counties liable for injuries arising on account of defective bridges.
2. A county is not liable to a pedestrian for injuries sustained by falling into an open and unguarded drainway extending from the surface of the road through the embankment to the culvert as described, which was constructed for the purpose of draining surface-water from the road.

DECEMBER 15, 1915.

Action for damages. Before Judge Bell. Fulton superior court. October 12, 1914.

Error was assigned on a judgment sustaining a general demurrer to the petition, in an action by a pedestrian against a county for personal injuries received by falling into a drainway, the mouth of which was at the inner edge of a sidewalk which was constructed along a public road. The controlling question was as to the liability of the county for an injury resulting from the maintenance of the drainway at the place alleged, without providing a cover therefor or other safeguard to prevent injuries to persons traveling along the road. The petition contained two counts, the only material difference between them being a variance as to the character of the place and the description of the construction of the road where the drainway was located. In the first count the following was alleged, in substance: There was a little "stream or ravine" running across Peachtree Avenue. "Prior to January 6th, 1913, the county built a bridge over said stream or branch, . . some 3½ or 4 feet wide and about 40 or 50 feet long, under which constantly runs a small stream of water, the said bridge being part of the said public road or highway. . . . After building the said bridge the said defendant built up the surface of the road across the said stream or ravine with dirt, making a fill some six (6) or seven (7) feet high, and the full width of the street about fifty (50) or sixty (60) feet, including both sidewalks. . . In making the said fill the said defendant built the said street or road in such a way that the water runs down toward the said bridge along the edge of the road, and by the sidewalk on both sides of the said stream. . . In order to allow the water, which

collects and runs down the street, to escape, there is an opening made on the left-hand side of said road going east from Peachtree Road, in the edge of the sidewalk next to the road, just over the said stream, making an opening from the surface of said street down through into said branch. . . The said opening is walled up from the branch up to the surface of the sidewalk with stone, making an opening of about eighteen (18) or twenty (20) inches square from the surface of said sidewalk· down through the fill into the branch, the said opening being about six (6) or seven (7) feet deep from the top down through into the branch. . . The upper end or top of said opening is some eighteen (18) or twenty (20) inches square, and is perfectly level with the surface of the sidewalk, and that the said opening is uncovered and has nothing around or about it to protect a person from stepping into the said opening. . . The said hole had been in that condition for a long period of time, the length of which is unknown to petitioner. . . . The said bridge was not built by a contractor, but that the same was constructed by county authorities, and that the said bridge was built since December 29th, 1888." In the second count the following is alleged, in substance: There is a little stream or ravine running across Peachtree Avenue. "At the point where said stream runs across the said road there was a hollow or low place between two little hills or elevations in said road; and . . some time prior to January 6th, 1913, the County of Fulton had built across the said hollow or ravine a causeway some one hundred and fifty (150) or two hundred (200) feet long, and some forty (40) or fifty (50) feet wide, being the full width of said road, including both sidewalks. In making said causeway the county filled the said hollow with dirt, making a fill varying from a fraction of an inch to six (6) or seven (7) feet high across the said hollow, the highest point of said causeway being directly over the said stream. . . Before making the said causeway, the county constructed a passageway over the said stream, extending across the said road, for the purpose of allowing the water to run through and under the said causeway. In building up said causeway to a height of six (6) or seven (7) feet over the said branch, the said road was constructed in such a manner that water running down the said road collects directly over the said branch. . . In order to allow the water to escape, the county constructed an

opening on the left-hand side of said road going east, and in the edge of the sidewalk from the surface of said sidewalk down through the said causeway into the said stream. The said opening is walled up from the branch up to the surface of the sidewalk with stone, making an opening of about eighteen (18) or twenty (20) inches square from the surface of said sidewalk down through the causeway into the branch, the said opening being about six (6) or seven (7) feet deep from the top down through the branch. . . The upper end or top of said opening is some eighteen (18) or twenty (20) inches square, and is perfectly level with the surface of the sidewalk, and that the said opening is uncovered and has nothing around or about it to protect a person from stepping into the said opening. . . The said hole had been in that condition for a long period of time, the length of which is unknown to petitioner." Portions of both counts have been omitted, as unnecessary for the decision of the case.

J. V. Pool, for plaintiff.

L. Z Rosser and Moore & Pomeroy, for defendant.

ATKINSON, J. (After stating the foregoing facts.) The first count does not distinctly allege whether the so-called "bridge," described as being 3½ or 4 feet wide, constructed over the branch and extending the full width of the road, existed as a bridge or whether it was merely a part of the construction of the road intended for a culvert. If the former, it was converted into the latter by construction of the road-bed, and it was of that character at the time the plaintiff received his injury. In other words, if prior to the construction of the fill there was a road in the course of which was the "bridge" mentioned above, and the effect of making the dirt-fill was to extend the road-bed of dirt over the bridge at a height of six or seven feet above the level of the bridge and on both sides thereof for the full width of the road, as alleged, the result would be a transformation of the road and the creation of a culvert. For definitions of a culvert see 12 Cyc. 990, and cases cited.

In *Parker* v. *Spalding County*, 134 *Ga.* 69 (67 S. E. 404), it was held: "1. A county is not liable to suit unless there is a law which in express terms or by necessary implication so declares. *Millwood* v. *DeKalb County*, 106 *Ga.* 743 (32 S. E. 577). 2. Under the provisions of the Political Code, § 603, declaring, 'Pro-

vided, however, that in every case the county shall be primarily liable for all injuries caused by reason of any defective bridges, whether erected by contractors or county authorities,' the county was not liable for the injuries set forth, as the injuries were not caused by reason of any defective bridge within the meaning of the word 'bridges' employed in such section." The decision in that case was one affirming the judgment of a trial court sustaining a general demurrer to the petition in an action against a county on account of a defect in an alleged bridge forming a part of the public road. It was alleged: "The bridge was over a branch, and water constantly ran under and through it. 'In constructing said bridge the county authorities built the same out of terra cotta about 24 inches in diameter, and in the upper end of the same they made a solid stone abutment about three feet high and about eight feet long, so as to draw all the water to and force it through this opening under the bridge of 24 inches. That the county authorities covered the terra cotta bridge with dirt so as to conceal the same.' The opening was inadequate to carry the water collecting above it, and as the water 'ran over the bridge it washed out the dirt, leaving a hole seven (7) feet long, eighteen inches wide, and twelve inches deep, on the top and side of the terra cotta bridge.'" It thus appears that the decision was made to turn on whether the hole which caused plaintiff's injury was a defect in a bridge within the meaning of the statute, and it was held as matter of law not to be so. We think the rulings in that case are decisive of the questions in this. Under a proper construction of the petition, the drainway into which the plaintiff stepped was no part of a bridge within the meaning of the statute. Relatively to the question under consideration, the drainway should be regarded merely as if it were a hole in the road-bed where there was no bridge.

The second count proceeds on the hypothesis that the fill was merely a causeway, and seeks to charge the county with liability on account of its defective condition created by the presence of the unprotected drainway. The demurrer was properly sustained as to both grounds. The case of *Howington* v. *Madison County*, 126 *Ga.* 699 (55 S. E. 941), involved the question of abutments of a bridge necessary to enable the public to use the bridge, which is a different case from that made by the allegations of the petition

now under consideration. In this case we are holding that under the allegations of the petition there was no bridge. However, the reasoning in the case cited is in harmony with the ruling we are making, and nothing is said in conflict therewith.

> *Judgment affirmed. All the Justices concur.*